IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JANE DOE, et al                         :

        v.                              : CIVIL NO. L-98-121

BLUE CROSS BLUE SHIELD OF               :
MARYLAND                                :
_____        :
                                        :
JOHN DOE, et al                         :
                                        :
        v.                              : CIVIL NO. L-99-2975
                                        :
BLUE CROSS BLUE SHIELD                  :
OF MARYLAND, et al                      :
_____        :

ORDER

    On October 20, 2000, this Court held a two-and-a-half hour
hearing on the record attended by all parties to address the
outstanding motions in the above-captioned cases.  Before this
Court are three motions, which, for the reasons stated herein,
are disposed of as follows:

    (i) Plaintiffs' Motion to File a Second Amended Complaint
(L-98-121 docket 96) is DENIED;

    (ii) Plaintiffs' Motion to Compel Defendants to Answer
Interrogatories and Produce Documents, and Request to File
Supporting Exhibits Under Seal (L-99-2975 docket 35) is GRANTED
in part and DENIED in part; and

    (iii) Defendants' Motion to Modify Subpoenas (L-99-2975
docket 36) is GRANTED.



A.   Plaintiffs' Motion to File a Second Amended Complaint

Plaintiffs' have filed a motion to file a second amended complaint.  The request to file the second amended complaint is unopposed by Defendants.  Nevertheless, this Court hereby DENIES Plaintiffs' motion and ORDERS the following:

1.  Counsel in L-98-121 advised this Court that Plaintiffs are abandoning all claims (whether individual or class) for denial of coverage.  By November 13, 2000 Plaintiffs in L-98-121 shall file an amended complaint deleting claims for denial of coverage.

2.  On or before November 13, 2000, Plaintiffs' counsel in L-99-2975 will advise the Court whether they are likewise abandoning individual and class claims for denial of coverage.

3.  If the plaintiffs in both L-98-121 and L-99-2975 abandon their individual claims for denial of coverage, then on or before December 4, 2000 Defendants shall file a status report advising the Court whether they wish to file a motion for summary judgment contending that Plaintiffs (a) are inadequate class representatives, or (b) have no legally cognizable claim to assert, whether individual or class, because they have not been harmed by a denial of benefits.

If Defendants intend to file such a motion, the status report should propose a briefing schedule, composed after consultation with opposing counsel.  In addition, the report

should state whether the parties wish to continue discovery

during the pendency of any motions for summary judgment.

B.   Plaintiffs' Motion to Compel Discovery

In 1998, Jane Doe filed a class action against Blue Cross

Blue Shield (L-98-121).  Parties in that case conducted class-

type discovery until August 2000, when this Court limited further

discovery to the Plaintiffs' individual claims.  The Court has

ordered the parties in L-98-121 to provide counsel in L-99-2975

with full access to the extensive discovery conducted in the

earlier case.

In resolving the present discovery issues, the Court is

mindful that it would be unfair to require Defendants to repeat

discovery already conducted; but, Defendants should be required

to provide discovery that was not reasonably covered in L-98-121.

The following disposes of the outstanding discovery

disputes.  Plaintiffs' motion is GRANTED in part and DENIED in

part.  Plaintiffs are entitled to reasonable discovery to

determine whether Green Spring and CareFirst have been using

medical necessity criteria different than the criteria specified

in the insurance policies covering the Plaintiffs.  They are not

entitled, however to the wide ranging and oppressive discovery

that they seek in their interrogatories and document requests.

1.  Interrogatories nine, ten, and ten(second)

In these three interrogatories, Plaintiffs seek documents

concerning Green Spring claim "reviewers."  Because Plaintiffs did not define the term "reviewers," Defendants interpreted the term to mean physician advisors.  The parties agree that Defendants have produced all requested documents for physician advisors.

Plaintiffs argue that the term "reviewers" also includes care managers.  Although care managers lack authority to resolve disputed claims, most requests for benefits are resolved at the care manager level.

Because of the potential burden, Defendants are not required to produce all documents for all care managers.  Defendants will provide Plaintiffs with a list of fifteen care managers. Plaintiffs' counsel may choose three care managers from the list. Defendants will produce the evaluations and personnel files for the three selected care managers as well as the care manager involved in the Plaintiffs' individual case in L-99-2975. Plaintiffs may also depose these four care managers.

2.  Interrogatories eleven and twelve

Plaintiffs seek records relating to how frequently Green Spring recommends denial of claims and how frequently CareFirst denies claims.  Specifically, Plaintiffs argue that they are entitled to Green Spring Utilization Management ("UM") reports. Defendants argue that this request is unduly burdensome because of the volume of UM reports.

The central issue in this case is whether the care managers and physician advisors were using a secret set of criteria to deny claims. The UM reports contain raw data about how often members use medical services, but they do not show how often claims are denied. Accordingly, the documents are not probative on the issue and Defendants are not required to disclose the UM Reports.

3. Interrogatory thirteen

Plaintiffs seek records relating to the frequency with which CareFirst grants or denies claims for mental health care contrary to the recommendation of Green Spring's reviewers. This Court is satisfied that Defendants have already produced all responsive data in their possession.

4. Interrogatory fourteen

Plaintiffs seek documents reflecting any analysis of the cost and benefits to CareFirst by using Green Spring to review claims. Essentially, two categories of documents are at issue – UM reports and "MAC" reports.

The UM reports are overly burdensome to produce and provide information in a form that is so general as to be meaningless to the issues raised in this case. The MAC reports are also of dubious relevance. Nevertheless, because they are assembled in one place and easy to produce, Defendants must produce the MAC reports from 1993 to 1999, inclusive.

Plaintiffs may also, if they have not already done so, take one deposition to assist them in interpreting the reports in general. Ultimately, Plaintiffs may need more data and information to interpret and analyze the data in these MAC reports. Plaintiff is forewarned, however, that this Court's ruling requiring disclosure of the MAC reports and permitting a deposition is not the first step down a never-ending path of discovery.

5.   Interrogatories fifteen and sixteen

Plaintiffs seek a list of all plans for which Green Spring reviews claims from CareFirst subscribers for mental health and substance abuse benefits. Defendants shall produce a list of all such plans to the Plaintiffs.

Plaintiffs also request that Defendants identify, from this list, any plans for which the Defendants apply medical necessity criteria different than the criteria in the Plaintiffs' plan. Defendants state that the definition of medical criteria is custom tailored for each plan. Moreover, Defendants have already provided Plaintiffs with a list of all the possible definitions of "medical necessity" which they use to create other plans. Accordingly, Defendants need not identify plans in which they apply criteria different from that in Plaintiffs' plan.

6.   Interrogatory eighteen

Plaintiffs request Green Spring's gross and net revenue from

the last ten years in order to show that the Defendants have used

an unreasonably restrictive medical necessity definition to cut

costs.  Gross revenue figures do not answer that question,

however, and are therefore irrelevant.  This financial data is

also highly confidential.

7.  Interrogatory twenty-one

Plaintiffs seek every Green Spring prospectus, registration

statement, or similar public financial document that discusses

income derived from services performed for CareFirst or Blue

Cross Blue Shield entities.  Because this is public information,

Plaintiffs can obtain it themselves.

8.  Interrogatory twenty-four

Plaintiffs seek documents that explain the financial

implication to each Defendant from the denial/approval of

benefits in (i) the plan pertaining to the Doe claim; (ii) other

plans which CareFirst administers or underwrites; and (iii) other

plans which CareFirst administers or underwrites and for which

Green Spring reviews the mental health and substance abuse

claims.  Plaintiffs are not entitled to the information

concerning other plans.

Plaintiffs are entitled, however, to deposition testimony to

determine whether the care managers or the physician advisors

knew or were pressured to take into account the cost implications

of their decisions.  At oral argument, Defendants explained that

the physician advisors and care managers are (a) not instructed
or pressured to take into consideration the profit implications
of their decisions, and (b) they do not know the profit
implications of their decision.  The Plaintiffs are permitted to
test this response through the depositions they are taking of the
four care managers.  Defendants must produce any documents (i)
discussing the cost implications of denial/approval decisions or
(ii) encouraging the care managers or physician advisors to take
cost into account.

9.  Document request one

     Plaintiffs seek all documents referred to or identified in
the Answers to Interrogatories.  Plaintiffs' general request is
denied.  This Court will consider production of documents on an
item-by-item basis.

10.  Document request nine

     Plaintiffs seek all documents provided to any other party in
the action since the filing of the complaint.  In their motion to
compel, Plaintiffs stated that they are seeking documents
relevant to interrogatory answers fifteen and sixteen.  The
Court's resolution of these two interrogatories is stated above.

11.  Document request eleven

     Plaintiffs seek all documents relating to the development
and application of the "medical necessity" definition in the
agreement between Villa Julie College and Blue Cross Blue Shield.

This Court is satisfied that Defendants have produced all responsive documents. Accordingly, Plaintiffs' request is denied

12. Document request twelve

Plaintiffs seek documents relating to the development and application of the "medical necessity" definition contained in the "GSMHS Utilization Review Criteria." Defendants argue that this particular definition was not used by Green Spring to review Doe's claim. Plaintiffs argue that this was the definition used to deny Doe's claim and that they have searched for any other documents bearing on this memorandum. Plaintiffs have leave to take a deposition of the former Green Spring employee who authored the document.

13. Document request fifteen

Plaintiffs seek: (i) copies of all health care plans, contracts or policies underwritten and/or administered by CareFirst for which Green Spring reviews mental health and substance abuse benefits; and (ii) documents setting forth how many persons formerly have been, and currently are, covered by these plans. Defendants argue that this request is overly burdensome and this Court agrees. Plaintiffs will receive documents regarding other health care plans only in accordance with this Court's resolution of interrogatories fifteen and sixteen.

14. Document request sixteen

Plaintiffs seek documents setting forth or discussing the number of mental health and substance abuse claims submitted to Defendants and the revenue derived therefrom from 1992 until the present. Plaintiffs' request is denied because the data they seek is overly burdensome to produce, of dubious relevance, and highly confidential.

15. Document request seventeen

Plaintiffs seek documents setting forth and discussing the amount of money Green Spring saved CareFirst by denying mental health and substance abuse treament as not "medically necessary." Defendants state that they have produced all documents responsive to this category. Plaintiffs argue that after answering the document request and denying possession of responsive documents, Defendants subsequently produced two responsive documents. Therefore, Plaintiffs suspect more documents may exist.

On or before November 6, 2000, Mr. Coe shall write a letter to this Court, with copy to Plaintiffs' counsel, stating that Defendants have made a diligent search and uncovered only the two responsive documents.

16. Document request eighteen

Plaintiffs seek documents setting forth the nature and amount of all payments by CareFirst to GreenSpring for services performed by GreenSpring. Defendants state that they have produced all documents responsive to this request. This Court is

satisfied that all responsive documents have been produced.

17.  Document request nineteen

Plaintiffs seek documents relating to the development and application of the criteria for Inpatient Psychiatric Treatment. Defendants state that they have produced all documents responsive to this request.  This Court is satisfied that all responsive documents have been produced.

18.  Document request twenty

Plaintiffs seek all documents setting forth the methods and terms by which Green Spring reviewers are paid.  Plaintiffs will have an opportunity to depose the four case managers on this issue.  Furthermore, the Court understands that physician advisors have already been deposed on this issue.

19.  Document request twenty-four

Plaintiffs seek documents sufficient to identify and explain the corporate organization of Green Spring and CareFirst. Defendants argue that they have already given Plaintiffs the corporate organizational charts.  Defendants shall provide Plaintiffs with updated organizational charts.  Plaintiffs may take the deposition of a corporate officer of Green Spring and CareFirst to explain the new charts.

20.  Document request twenty-five

Plaintiffs seek documents sufficient to identify all individuals with decision making authority regarding

denial/approval of claims for mental health and substance abuse
treatment.  Defendant has provided full information about how a
claim is handled, from initiation through the review and appeals
process.  If the Plaintiffs need more information, they can take
a 30(b)(6) deposition to review the internal appeals process, but
only to the extent that the information was not already provided
in L-98-121.

C.  Defendants' Motion to Modify Subpoenas

    Plaintiffs in L-99-2975 served subpoenas for designee
depositions of CareFirst and Green Spring.  Each subpoena
includes a definition of "you" as "the defendant, along with its
parent, subsidiaries and related and affiliated entities,
employees, officers, representatives and agents."  The subpoenas
request designee depositions on five topics.

    Defendants filed a motion to modify the subpoenas, seeking
two revisions: (i) to modify the definition of "you;" and (ii) to
exclude topics two through five.  For reasons stated below, this
Court will GRANT Defendants' motion to modify the subpoenas.

    Defendants argue that the definition of "you" is overbroad
and burdensome.  Compliance with the subpoena as written would
encompass hundreds of companies for Green Spring and several out-
of-state companies for Care First.  Defendants seek to modify the
definition of "you" to require responses from CareFirst and from
Green Spring relating to its work for CareFirst, but not from

their corporate relatives.

This Court agrees with Defendants that the definition of "you," as written, is overbroad and burdensome. Responses from the numerous other companies would likely produce only irrelevant information.

Defendants next argue that this Court should exclude topics two through five of the subpoena. Defendants attest that the topics are beyond the scope of Plaintiffs' stated need for designee depositions, as identified in the August 4, 2000 telephone conference. According to Defendants, Plaintiffs expressed a need to depose computer personnel and Defendants agreed to produce the personnel. Defendants also argue that these topics were the subject of extensive discovery in L-98-121.

Because these topics have been covered during discovery in L-98-121 and Plaintiffs in L-99-2975 have been provided access to the discovery conducted in L-98-121, topics two through five of the subpoenas will be stricken.[1] This Court will not require Defendants to comply with duplicative discovery requests. The Court is also satisfied that the Defendants should not be required to produce access to their computers and databases so that the Plaintiff can create documents and data that Defendants

_____

[1]Topic three is also addressed in Plaintiffs' Document Request twelve. The Court granted Plaintiffs leave to take a deposition of the person who wrote the Medical Necessity definition in the "GMHS Utilization Review Criteria."

do not themselves choose to produce in their business.

IT IS SO ORDERED this 1st day of November, 2000.


_____
Benson Everett Legg
United States District Judge